Page 1

1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
2                      MIAMI DIVISION

3

4
                              CASE NO. 23-12217-LMI
5

6   IN RE:

7     EDGEWATER CONSTRUCTION GROUP,
      INC.,
8
          Debtor.
9   _____/

10

11

12   APPLICATION TO EMPLOY AGENTIS (20), EMERGENCY MOTION TO USE
      CASH COLLATERAL (15), LIMITED OBJECTIONS THERETO (69) AND
13    (70), EMERGENCY MOTION TO APPROVE POST-PETITION FINANCING
      (18), AMENDED MOTION TO COMPEL ASSUMPTION OR REJECTION, ETC.
14   (64), OBJECTION THERETO (71), MOTION TO SHORTEN TIME (55),
                    OBJECTION THERETO (56)

15

16                      April 12, 2023

17           The above-entitled cause came on for hearing

18   before the Honorable LAUREL M. ISCOFF, one of the Judges in

19   the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN

20   DISTRICT OF FLORIDA, at 301 North Miami Avenue, Miami,

21   Miami-Dade, Florida on April 12, 2023, commencing at or

22   about 11:30 a.m., and the following proceedings were had:

23           Transcribed from a digital recording by:
             Anna M. Meagher, Stenographic Reporter
24

25

```
 1                      APPEARANCES:
 2                    Agentis, PLLC, by
                 Jacqueline Calderin, Esquire
 3               Robert P. Charbonneau, Esquire
                    On behalf of the Debtor
 4               Email:  Jc@agentislaw.com
                 Email:  Rpc@agentislaw.com
 5

 6                 Phelps Dunbar, LLP, by
              Patrick "Rick" M. Shelby, Esquire
 7   On behalf of John Moriarty & Associates of Florida, Inc.
                 Email:  Rick.shelby@phelps.com
 8

 9               Gerard M. Kouri Jr., Esquire
           On behalf of United Fire Insurance Company
10                 Email:  Gmkouri@aol.com
11

                    Holland & Knight, LLP, by
12             Kenneth "Ken" R. Ritchie, Esquire
                    On behalf of PPF 45 AMLI
13               Email:  Ken.richie@hklaw.com
14

                    The Barthet Firm, by
15               Sundeep K. Mullick, Esquire
               On behalf of Gator Gypsum, Inc.
16               Email:  Smullick@barthet.com
17

                 VIA ZOOM VIDEO CONFERENCE:
18

19         Watt Tieder Hoffar & Fitzgerald, LLP, by
                 Marguerite Lee DeVoll, Esquire
20               Mariela M. Malfeld, Esquire
             On behalf of QBE Insurance Corporation
21               Email:  Mdevoll@watttieder.com
                 Email:  Mmalfeld@watttieder.com
22

23                               Continued...

24

25
```

1                         Adams and Reese, by
                       Angela N. Grewal, Esquire
2              On behalf of NRQ Construction, Inc.
                  Email:  Angela.grewal@arlaw.com
3

4                   Dan L. Gold, Staff Attorney
                      Office of the US Trustee
5                      Department of Justice
                  Email:  Dan.L.Gold@usdoj.gov
6

7
                           Also Present:
8
                    B. Riley Advisory Services, by
9               Carol Fox, Subchapter V Trustee
                  E-mail:  Cfox@glassratner.com
10

11

12                      - - - - - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Thank you.  Please be seated.

2          Well, I just got to take a look outside, and so

3    all I can say is I'm sorry.  Wow.  All right.  Well, I know

4    my yard will be happy.

5          All right.  We're here this morning on Edgewater

6    Construction Group, Inc., 23-12217.  I'll take appearances

7    in the courtroom, and then I'll take appearances on the

8    virtual courtroom.

9          Just a few announcements before we get started,

10   this is for the benefit primarily of those of you in the

11   virtual courtroom, and that is to please remember if you are

12   going to turn your camera on that you are expected to be

13   attired in the same way that you would be dressed if you

14   were appearing in the actual courtroom, because the virtual

15   courtroom is a courtroom nonetheless.

16         Also please remember this is a recorded

17   proceeding.  Only the Court may record the proceeding.  Any

18   other recording is a violation of Florida law and will

19   subject the violator to sanctions by the Court.  For those

20   of you in the courtroom, if you wish to speak you will stand

21   and wait your turn, but everybody will get a chance to

22   speak.  For those of you who have appeared before me before,

23   you know that.

24         For those of you in the virtual courtroom, again,

25   I will invite anyone that wants to speak to do so, and if

1   you have more to say or for some reason I haven't called on

2   you, you can raise your virtual hand or your actual hand if

3   your screen is on.  Just like you have to unmute to speak,

4   if your camera is off and you raise your actual hand, I

5   can't see you.

6          Okay.  Finally, when you turn your camera on if

7   you chose to do so, make sure you are sitting, you are not

8   walking, you are not driving in a car, and I've shared this

9   with some of you, Mr. Gold is now heard this for the 14th

10  time, don't be in a bathtub.  A judge told me two weeks ago

11  there was actually someone attending court with a camera on

12  in a bathtub.  I see Mr. Kouri is writing notes so he

13  doesn't forget not to be in the bathtub the next time he's

14  in court virtually.

15         MS. CALDERIN:  Your Honor, does this include

16  Jacuzzis.

17         THE COURT:  Anything other than a chair, how's

18  that?  Maybe that will save myself, a chair, fully clothed.

19  Okay.  Let's go with that, that seems to be like the safe

20  space.

21         Okay.  So with all of that, we will now start with

22  appearances in the courtroom.  So, Ms. Calderin.

23         MS. CALDERIN:  Good morning, your Honor.

24  Jacqueline Calderin, C-A-L-D-E-R-I-N, with Agentis.  We are

25  counsel to Edgewater Construction Group, Incorporated,

1  debtor-in-possession.  I'm joined by my partner, Robert

2  Charbonneau, C-H-A-R-B-O-N-N-E-A-U.  Also in the courtroom

3  with us is Mr. Ulysses Vazquez, V-A-Z-Q-U-E-Z, and

4  Mr. Vazquez is the president of the debtor.

5          THE COURT:  All right.  Welcome, Mr. Vazquez.

6          All right.  Ms. Fox.

7          MS. FOX:  Good morning, your Honor.  Carol Fox,

8  F-O-X, Subchapter V trustee.

9          THE COURT:  All right.  Mr. Kouri.

10          MR. KOURI:  Good morning, your Honor Gerard Kouri,

11  K-O-U-R-I, on behalf of Surety United Fire Insurance

12  Company.

13          THE COURT:  Okay.

14          MR. SHELBY:  Morning, your Honor.  Rick Shelby on

15  behalf of John Moriarty & Associates of Florida.

16          THE COURT:  All right.  Mr. Shelby, please spell

17  your last name for the record.

18          MR. SHELBY:  S-H-E-L-B-Y.

19          THE COURT:  Thank you.

20          MR. SHELBY:  And also in the courtroom, I have

21  Mr. John Leete, L-E-E-T-E, and Ms. Vanessa Florez,

22  F-L-O-R-E-Z.  They are both representatives of John

23  Moriarty.

24          THE COURT:  Okay.

25          MR. RICHIE:  Good morning, your Honor.  I'm Ken

1    Richie, R-I-C-H-I-E.  I represent one of the owners impacted

2    by this case AMLI -- or it's PPF 45 AMLI.

3             THE COURT:  All right.  Can you say that name

4    again?

5             MR. RICHIE:  Ken Richie.

6             THE COURT:  No, no, not your name.

7             MR. RICHIE:  Oh.

8             THE COURT:  Your client, I'm sorry.

9             MR. RICHIE:  It's the owner entity.  It is called

10   PPF 45 A-M-L-I.  We pronounce it Am-ly.

11            THE COURT:  A-M-L-I, got it PPF 45 AMLI.

12            MR. RICHIE:  Yes, your Honor.

13            THE COURT:  Got it.

14            MR. RICHIE:  Thank you.

15            THE COURT:  Okay.  In the virtual courtroom,

16   Mr. Gold.

17            MR. GOLD:  Good morning, your Honor.  Dan Gold,

18   G-O-L-D, for the U.S. trustee.

19            THE COURT:  All right.  Ms. Grewal.

20            MS. GREWAL:  Good morning, your Honor.  Angela

21   Grewal, G-R-E-W-A-L, on behalf of NRQ Construction, Inc.

22            THE COURT:  All right.  And Ms. DeVoll.

23            MS. DEVOLL:  Good morning, your Honor.  Marguerite

24   DeVoll, D-E-V, as in V, O-double-L, with Watt Tieder Hoffar

25   Fitzgerald.  My admission pro hoc vice is pending, and also

Page 8

1  on the line my local counsel Mariela Malfeld, that's

2  M-A-L-F-E-L-D, also with Watt Tieder, and we represent the

3  surety, QBE Insurance Company.

4           THE COURT:  Q-E-V?

5           MS. DEVOLL:  QBE, Q-B, as in boy, E, as in

6  elephant, Insurance Company.

7           THE COURT:  All right.  Thank you.

8           All right.  Ms. Malfeld, do you wish to make your

9  own appearance?  You need to unmute.

10           MS. MALFELD:  Ah, yes, Mariela Malfeld on behalf

11  of QBE.  Pardon my attire.  When the (distorted audio)

12  hearing came up, I was already set to be out-of-town, so,

13  again, apologies for my attire.

14           THE COURT:  Okay.  Thank you.

15           Is there anyone else in the virtual courtroom who

16  wishes to make appearance?

17           (No audible response.)

18           THE COURT:  I will note that we do have law

19  students attending today, so everybody be on your best

20  behavior, not that you wouldn't be anyway.

21           Mr. Charbonneau, did you wish to make your own

22  appearance?

23           MR. CHARBONNEAU:  I think Ms. Calderin had that

24  covered, your Honor.

25           THE COURT:  All right.  So we're here -- let's do

1    the easy one first, which is the final application to

2    employ, and then we will go through the rest of the motions.

3              But why don't you give me an update on status to

4    the extent anything has changed since either last we were

5    together or last night when I last checked the docket.

6              MS. CALDERIN:  Yes, your Honor.  I had planned to

7    bring the Court up to speed, and I actually would like to

8    cede the lectern to Mr. Charbonneau for --

9              THE COURT:  But only if you promise to speak into

10   the microphone.

11             MS. CALDERIN:  Yes, ma'am.  Thank you.

12             -- for a couple of minutes, just to bring the

13   Court up to speed what we've done on the litigation front.

14             Your Honor, when we came before the Court on first

15   day hearings, I explained to the Court what the debtor does

16   and what our plan was.  Our plan with a small letter "p",

17   not plan in the Chapter 11 sense with respect to this case.

18   We have now been in bankruptcy for three weeks.  We have had

19   what I would consider relatively advanced conversations with

20   United Fire, one of the major sureties, our performance

21   sureties, on some of the projects, and, specifically,

22   Moriarty, who is in the courtroom today, has -- I believe

23   there are four or five projects that are covered by United

24   Fire insurance.

25             So after today's hearing we are going to all be

```
 1   meeting and hopefully we can come back to this court with
 2   some resolution.  And the resolution is very important.
 3              Oh, and I will also note that we have begun
 4   conversations with QBE, another performance surety company.
 5   There's -- those conversations are, I think, going to be
 6   less comprehensive because they don't -- we don't have them
 7   on too many projects.
 8              We have filed a complaint that the Court may be
 9   aware of now, and we'll be filing a couple of subsequent
10   complaints, mostly to recover funds that the debtor is due,
11   and Mr. Charbonneau is going to speak to that just briefly.
12              Your Honor, this week is going to be crucial.  We
13   obtained at first day hearings authority to pay prepetition
14   labor.  It was our intention to put everybody back to work
15   and to get a resolution.  But until, until, we get money to
16   pay those employees, we can't guarantee that we can put them
17   back to work.  They are still willing.  Mr. Vazquez is in
18   contact with them.  A couple have gotten other jobs.
19              But unlike a lot of companies who are in the same
20   situation, but the insiders don't have liquidity where their
21   employers or sub-subs have not gotten paid.  In this case
22   Mr. Vazquez -- Mr. and Mrs. Vazquez, as the Court already
23   knows, have dipped into their own pockets and, but for those
24   two weeks that we asked the Court for permission to pay,
25   have paid all of their employees, even when they haven't
```

1    been paid for four months by the contractors who employed

2    them on draws that have been properly requested.

3            So that just goes to the heart of what I'm saying,

4    the employees have been very loyal and are still willing to

5    perform.  But absent some resolution, immediate resolution,

6    which is why we had to file those complaints, I don't know

7    if, you know, we'll be back here in two weeks with a

8    different plan, and there will be a plan.  There will be a

9    plan where we will preserve litigation claims until later,

10   and there will be a very reduced business model where

11   they're no longer doing subcontracting work, but doing more

12   GC type of work as I told the Court.  So there will be a

13   plan.  There will be a reservation of all litigation claims.

14           You know, Ms. Fox will -- you know, may be the

15   liquidating trustee or not -- or the plan administrator or

16   somebody else will, but this week and make into next week

17   will certainly determine the future of the plan with a small

18   "p" and what will determine the plan.

19           So that's where we are today, and I would like to

20   cede the lectern to Mr. Charbonneau just for a couple of

21   minutes to bring the Court up to speed as to what we will be

22   doing on the litigation front and what to expect in the next

23   couple of weeks.

24           THE COURT:  All right, thank you.

25           All right.  Mr. Charbonneau, also please speak

```
 1   into the microphone.

 2           MR. CHARBONNEAU:  Yes, your Honor.  I don't have a

 3   ton more to add than what Ms. Calderin said.  I was going to

 4   make a very short electronic presentation.  The Court system

 5   did not really cooperate, but I did come prepared with

 6   handouts if I can approach Ms. Heckman.

 7           THE COURT:  What is the purpose of the handouts?

 8           MR. CHARBONNEAU:  Judge, I just wanted to show the

 9   Court the kind of work that the debtor does.

10           THE COURT:  All right.  Well, you can share the

11   photos with Mr. Shelby --

12           MR. CHARBONNEAU:  Of course.

13           THE COURT:  -- and whoever wants, Mr. Kouri,

14   Ms. Fox if she wants a copy and, I guess, me, but -- or you

15   can -- oh, you can use the handy-dandy overhead thingy.

16           MR. CHARBONNEAU:  Okay.

17           THE COURT:  That's a technical term.  Look at

18   that.  Now, Ms. Hechman is the queen of the -- ew, all

19   right, stop wiggling it.  Okay.

20           Do we have a woman that can help with this?

21   (Laughter.)

22           Mr. Mullick, did you wish to make appearance?  I

23   see you came in late.

24           UNIDENTIFIED SPEAKER:  No, no, the other way, the

25   camera is --
```

1           THE COURT:  Yes, please do not put

2    Mr. Charbonneau's face -- okay.  While Mr. Charbonneau is

3    trying to figure out how to work this, Mr. Mullick, please

4    make your appearance.

5           MR. MULLICK:  Yes, your Honor.  On behalf of the

6    creditor Gator Gypsum, Sundeep Mullick from The Barthet

7    Firm.

8           THE COURT:  All right.  And spell your client's --

9    well, spell your last name for the record, even though I

10   know how to spell, but go ahead.

11          MR. MULLICK:  M-U-L-L-I-C-K.

12          THE COURT:  And the spelling of your client's

13   name?

14          MR. MULLICK:  Gator, G-A-T-O-R, Gypsum,

15   G-Y-P-S-U-M.

16          THE COURT:  All right.  Thank you, Mr. Mullick.

17          MR. MULLICK:  Thank you.

18          THE COURT:  All right.  Let's see how well he

19   does.

20          MR. CHARBONNEAU:  Ah, look at that.

21          THE COURT:  Okay.  Go ahead.

22          MR. CHARBONNEAU:  "Y" chromosome and all, your

23   Honor.

24          THE COURT:  All right.  Go ahead.  Keep going.

25          MR. CHARBONNEAU:  Your Honor, I wanted to give the

1   Court and perhaps parties an idea of --

2            UNIDENTIFIED SPEAKER:  Microphone.

3            MR. CHARBONNEAU:  I wanted to give the Court an

4   idea of the kind of work that Edgewater does.  Edgewater is

5   not a single family home developer, not that there's

6   anything wrong with that.  But what I have up on the screen,

7   your Honor, is the Four Seasons hotel in Fort Lauderdale.

8   It is a gorgeous building, and as you can see -- I don't

9   know if the Court can see, it won an award for best

10  construction management of a hundred million dollars and

11  over.  The exterior that you see there, your Honor, is the

12  stucco work that Edgewater did.  It's a very attractive

13  building.  This is another view of it.

14           And the reason why I'm telling the Court about --

15           THE COURT:  Only if you do it into a microphone.

16           MR. CHARBONNEAU:  The reason why I have that up,

17  your Honor, is that you will see that even though this

18  project turned out beautifully well and even though it won

19  an award, Edgewater still had to sue Coastal in order to get

20  paid for the magnificent work they did.  And, unfortunately,

21  your Honor, that seems to be the present state of

22  construction in South Florida, and I say this, because you

23  may hear throughout the course of this hearing, "Well, you

24  know, Edgewater is having trouble with all of its

25  contractors," and it is, Judge.  The trouble that it's

1   having is that it's not being paid, and so we have

2   brought -- because Moriarty moved to compel assumption and

3   rejection and for stay relief, they were the first --

4            THE COURT:  Well, the only thing I have on for

5   hearing today is the motion to shorten time.  But go ahead.

6            MR. CHARBONNEAU:  Yeah, I think there's

7   alternative relief in there for stay relief, but I could be

8   wrong.

9            THE COURT:  Okay.  Keep going.

10           MR. CHARBONNEAU:  So that was the first GC in the

11   ownership structure, that Mr. Richie I believe represents,

12   one of the owners.  We pursued turnover.  We pursued

13   turnover, your Honor, because these construction jobs, as

14   Ms. Calderin said, were properly submitted.  We believe they

15   are mature debts that fit within 542(b).  There's also

16   tangible personal property on the job sites, including raw

17   material that if we are not going to be permitted back

18   on the job through an assumption or accommodation under

19   9019, we'd like to get back, and we understand it's being

20   used.

21           And, Judge, within the adversary that we filed, we

22   filed an emergency -- or a motion for expedited hearing for

23   the -- on the turnover count, 542(a) and (b).  That is up

24   for what I think is a preliminary hearing on the 19th.

25   There is probably going to be another adversary proceeding

1    filed involving projects involving Coastal and their

2    ownership.

3              That's kind of the update on the litigation, your

4    Honor.

5              THE COURT:  All right.  Thank you.

6              All right.  You may now -- no.  You just take the

7    paper and then close it, and I think it turns itself off,

8    something like that.

9              MR. CHARBONNEAU:  (Laughter.)

10             THE COURT:  That's okay just -- (laughter.)  We'll

11    fix it when you leave.

12             MS. CALDERIN:  Thank you, your Honor.

13             Okay.  So may it please the Court, then, your

14    Honor, I think we'll move into ECF 20.  It's our application

15    to employ.  The Court entered an interim order approving the

16    retention of Agentis as general counsel to the debtor.  No

17    objections have been filed.  Twenty-one days have occurred

18    since the petition date.  We would ask the Court to approve

19    our application on a final basis.

20             THE COURT:  Okay.  Is there anyone -- there was no

21    objection filed.

22             Mr. Gold, did you have anything you wished to add?

23             MR. GOLD:  No, your Honor.

24             THE COURT:  Okay.  And I assume there's no

25    objections from the courtroom since none were filed?

```
 1                    (No audible response.)
 2                    THE COURT:  Okay.  Then the motion will be granted
 3      on a final basis.  Please submit the order, Ms. Calderin.
 4                    MS. CALDERIN:  Thank you, your Honor.
 5                    Then, your Honor, I think we should go --
 6                    THE COURT:  Only if you talk into the microphone.
 7                    MS. CALDERIN:  Yes, your Honor.
 8                    THE COURT:  I mean, I don't care, if you don't
 9      want a transcript of the hearing, doesn't bother me, but --
10                    MS. CALDERIN:  I think that would bring us, then,
11      to ECF 18, the debtor's emergency motion to approve
12      post-petition financing filed by the debtor.  The Court may
13      recall this is insider financing.  It's to approve a
14      facility with -- from the debtors.
15                    We have agreed with Mr. Gold that any repayments
16      directly back to the debtor, as opposed -- to debtor's
17      principals, as opposed to a payment, say, to AmericanExpress
18      that's properly documented would only be done pursuant to
19      notice and that the -- any financing would exclude payment
20      to the insiders on account of their wages.  And we have
21      agreed to include a negative notice bulletin on any notice
22      that goes out to the extent that the insiders seek repayment
23      of any advances during the pendency of this case.
24                    There have been no objections filed, and we would
25      ask the Court to approve that motion on a final basis.
```

1           THE COURT:  Okay.  Are there any -- anyone in the

2    courtroom who wishes to speak as to this motion?

3           (No audible response.)

4           THE COURT:  All right.  Anyone in the virtual

5    courtroom?  Mr. Gold, we'll start with you.

6           MR. GOLD:  No, I believe Ms. Calderin has it

7    correct.  I agree with her presentation and those caveats

8    that we built into any draws and any repayments on notice as

9    Ms. Calderin set forth, A-O-K with me.

10          THE COURT:  Okay.  Ms. DeVoll.

11          MS. DEVOLL:  I apologize.  No comments, I was

12   coughing.

13          THE COURT:  Oh, sorry.

14          All right.  And I'm going to get the name of your

15   pronunciation correct eventually, but Ms. Grewal.

16          MS. GREWAL:  Gray-wal, your Honor.

17          Yes, no comments from us.

18          THE COURT:  All right.  Then I'll go ahead and

19   I'll grant ECF 18 on a final basis with the tweaks that have

20   been discussed in court.

21          All right.  What next?

22          MS. CALDERIN:  Thank you, your Honor.

23          And that brings us to ECF 15, our emergency motion

24   for use of cash collateral, and I would direct the Court 's

25   attention to ECF 63, which was filed on April 7th.  It's a

1    notice of filing proposed second interim cash collateral

2    budget.

3              Now, your Honor, today is set for final hearing.

4    We are not prepared for use of cash collateral on a final

5    basis.  And the notice that I filed on 63, at ECF 63,

6    reflects the debtor's intent with respect to use of cash

7    prospectively.  The collateral -- the cash that's being

8    used, just as a foundation to this, my presentation, is cash

9    that Mr. and Mrs. Vazquez have put into the company, so

10   there have been no receipts -- no material receipts that are

11   being used.  It's hard to -- you know, dollars are fungible,

12   so it's hard to pinpoint what dollars are what.

13             But we are looking to use cash collateral on a

14   very limited basis.  To the extent that we work out some

15   arrangement that we will bring before this Court with any of

16   the contractors, owners, and/or sureties, we will bring it

17   before the Court and ask the Court too augment use of cash

18   collateral and provide whatever appropriate -- um --

19             MR. CHARBONNEAU:  Protection.

20             MS. CALDERIN:  -- protections, thank you, adequate

21   protections need to be provided.

22             THE COURT:  Okay.

23             MS. CALDERIN:  But to the extent of cash

24   collateral today, your Honor, ECF 63 reflects that an order

25   to make the minimum operating costs, Ulysses and Dulce

Page 20

1    Vazquez will be lending $15,000 to the debtor.  They will be

2    excluded from payroll as reflected in one of the line items

3    under expenses, and we are asking, instead, for a second

4    interim cash collateral order approving this budget through

5    May 15.  We have a status conference on May 10th, and so we

6    would ask the Court to set the final hearing for May 10th.

7                THE COURT:  All right.  Anyone in the courtroom

8    wish -- I did note the limited objections that were filed by

9    Mr. Shelby and Ms. Malfeld.

10               Is there anyone -- which I believe have been

11   resolved; is that correct?

12               MS. CALDERIN:  Your Honor, yes, and I circulated

13   an order.  Because we are not using anyone's cash

14   collateral, everyone has consented to the form of order.  I

15   ran it by Mr. Gold, by Ms. Fox, by Ms. DeVoll, and by

16   Mr. Shelby, and everyone seems to be onboard.

17               THE COURT:  Okay.

18               MS. CALDERIN:  And also by Mr. Kouri.

19               THE COURT:  Okay.

20               MS. CALDERIN:  Your Honor, I also sent it to

21   Banesco and to Ms. -- and Ms. Tascher (phonetic) with the

22   SBA.

23               THE COURT:  All right.  Is there anyone in the

24   courtroom that wishes to speak?

25               Mr. Shelby.

1           MR. RICHIE:  Yes, thank you, your Honor.  Rick

2    Shelby on behalf of John Moriarty & Associates.  We did file

3    a limited objection.

4           Counsel for the debtor is correct, we've had a

5    conversation that this is an interim order, and to the

6    extent that there could be funds that would be subject to

7    trust or surety approval for release or other claims, we did

8    not want that to be included with any cash that would be

9    used by the debtor at this time.  So we still reserve the

10   right, on a final basis, to request the same language in the

11   final order, which we think if there's agreement on it

12   should be included, but at this point we don't have any

13   objections on the form of interim order.

14          THE COURT:  Okay.  Well, when we get to the final

15   order, we'll deal with it at that time.

16          MR. SHELBY:  Okay.  Thank you, your Honor.

17          THE COURT:  All right.  Anyone in the virtual

18   courtroom?  No?

19          Oh, okay.  Ms. DeVoll.

20          MS. DEVOLL:  Yes, your Honor, Marguerite DeVoll on

21   behalf of QBE Insurance.  I would echo Mr. Shelby's comments

22   that we did file a limited objection with regards to what

23   cash is being used, and I would just say on the record that

24   based on the clarifications received from Ms. Calderin

25   concerning what cash is being used, we do not object to the

Page 22

1    interim order.  But we reserve all rights as to the final

2    order to the extent it implicates the sureties' interest

3    those cash.

4              THE COURT:  Absolutely.

5              And I just noticed that I didn't turn my video on

6    and my law clerk didn't even yell at me this time.  Oh, yes

7    she did.  Okay.  I guess I was just ignoring her.  Sorry

8    about that.  I'm here.  That wasn't me in the ether.

9              Okay.  So I will go ahead and I will grant ECF 15

10   on an interim basis, and -- with the final or the continued

11   hearing -- through 5/15 with the next hearing -- we'll just

12   call it next hearing on 5/10 at whatever time we already

13   have the status conference set for.

14             And you'll prepare at that order, Ms. Calderin,

15   yes?

16             MS. CALDERIN:  I will, your Honor.

17             And so I circulated an order that said "final"

18   hearing, but rather than final hearing, I will just

19   substitute the word "continued" hearing.

20             THE COURT:  Which can be a final hearing.  It will

21   just depend on what you file between now and then.

22             MS. CALDERIN:  Yes, your Honor.

23             THE COURT:  Okay.

24             MS. CALDERIN:  And, your Honor, for me that is all

25   on my plate today.

1              THE COURT:  Okay.

2              MS. CALDERIN:  I believe, I am cede the lectern

3    now to Mr. Shelby.

4              THE COURT:  Okay.  So, Mr. Shelby, we're going --

5    really all that I have -- although the amended motion is set

6    for today, what I really want to addressed today primarily

7    is the motion shorten time, which is ECF 55, and the

8    objection that's been filed by the debtor.

9              So, go ahead, make your argument, and address the

10   response by the debtor in your presentation.

11             MR. SHELBY:  Thank you, your Honor.  Rick Shelby

12   on behalf of John Moriarty & Associates of Florida.

13             So this is a case where a sub has filed a

14   bankruptcy, and I represent a general who was -- had

15   terminated one contract prepetition with the debtor and was

16   in the process of doing the same on the other contracts.

17   There's been issues raised by the debtor concerning payment,

18   and up until the beginning of this year, payment was being

19   made to the debtor.  Issues began to happen.  Project

20   performance issues, quality control issues, manpower issues,

21   delay that caused other contractors to be held up on the

22   project.

23             Also the owners were not releasing funds, because

24   there was a period of time when the debtor's insurance had

25   expired.  It expired in February of '23.  It has been

1    confirmed that it was renewed right before the expiration

2    period, but to get the information necessary to provide the

3    owners to get the pay applications approved, there has to be

4    a proper certificate of insurance shown that avoids a

5    significant risk of having subs and other workers on the

6    project at that uninsured.  That took some time, and did not

7    effectively get completed until March 16th or 17.  So

8    payment was being upheld for those issues.

9            THE COURT:  So you're saying that it took two

10    weeks for the debtor to provide you a copy of the

11    certificate of insurance?

12            MR. SHELBY:  The certificate of insurance was

13    provided when the insurance was renewed.  It was not the

14    correct form and did not provide the correct information as

15    required by the owners of what should be the insurance

16    that's available on the policy.  And it had to be corrected,

17    and it was corrected in almost every instance, but one that

18    we're aware of.  It just took until the end of March.  So

19    payment applications are held up in that instance.

20            Also there's not been surety consent to release

21    certain funds that are being upheld that are the subject of

22    their turnover complaint, and not all those funds that they

23    say are being held by Moriarty are, in fact, being held by

24    Moriarty.  Owners have withheld payments given the

25    circumstances that we're under.

1          Also through this process, Moriarty has learned

2     that workers and subs that were being provided by the debtor

3     were uninsured or may be uninsured, so returning those

4     workers and subs to the work site presents a significant

5     risk.

6          THE COURT:  What do you mean they were uninsured?

7          MR. SHELBY:  Well, they were hiring subs and

8     workers that were not direct employees of the debtor.  So

9     the debtor hires out work, to get certain subs on the job or

10    manpower on the job to help to complete the project, hired

11    labor.  And there are requirements under these contracts and

12    by the owners to provide proof of insurance for those

13    parties.  We are not aware that that's been provided in each

14    instance.

15         That's come up through subsequent investigation

16    that the sureties are doing and that my client has been

17    doing to sort of get to the bottom of all of this.

18         THE COURT:  So there was an issue regarding

19    workers' comp insurance certificates?

20         MR. SHELBY:  That's my understanding --

21         THE COURT:  Okay.  What else?

22         MR. SHELBY:  -- that's correct.

23         The -- so --

24         THE COURT:  Okay.  And, remember, all of this is

25    just by way of presentation of why --

1            MR. SHELBY:  I understand.

2            THE COURT:  -- this needs to be heard on an

3    expedited basis.

4            MR. SHELBY:  Correct.

5            And here's the fundamental problem, and I think

6    the Court can recognize this, and I think everyone in this

7    courtroom that lives in this world of construction

8    understands this.  We are already at a 21-day delay on the

9    work that needs to be performed by this debtor.

10           The debtor has retrieved tools and to many some

11   extent demobilized on certain projects.  We think some

12   rental equipment may be being removed that has been placed

13   there by the debtor.  Getting the debtor back up to work and

14   recognizing the issues that counsel has presented this

15   morning, that they are not sure they can got everybody back

16   to work --

17           THE COURT:  Because they are not getting paid, I

18   think is what she said.

19           MR. SHELBY:  Well, that's their position, correct.

20   But there's a process for getting paid that had been --

21           THE COURT:  Well --

22           MR. SHELBY:  -- not an issue --

23           THE COURT:  -- I understand, and those are matters

24   that will come before me on a scheduled evidentiary hearing

25   when we get there.

1                MR. SHELBY:  Well, so the issue on timing is, my

2       client needs to move forward, needs to be able to exercise

3       rights under the contract to the extent that those rights

4       might include supplementation of work force to continue the

5       project, which is allowed by the contract, but, you know,

6       caution leads me to believe, requires modification of the

7       automatic stay to avoid a presumption that giving

8       supplemental work force, then, would violate the stay --

9                THE COURT:  Well, that's not the relief -- all

10      right.  What I want to know is, why you believe you need to

11      have the debtor make a decision regarding assumption or

12      rejection now?  And so what I'm hearing you say is, there's

13      been a 21-day delay --

14                MR. SHELBY:  Yes.

15                THE COURT:  -- and your client needs to move

16      forward with this project.

17                MR. SHELBY:  That's correct, your Honor.

18                And every day that goes by is damage delays, and

19      the owners are under projects that are residential rental

20      property projects that are approaching completion, and in

21      South Florida, getting those complete and ready to open at

22      the time of year when people are looking for those types of

23      properties is money.

24                And so the process is held up also by having to

25      deal with the fact that these are bonded projects, and the

```
 1    bonding company certainly has its rights, but with respect
 2    to the inability to terminate or the inability to supplement
 3    work force or the inability to know if the debtor can
 4    perform, provide adequate assurance of future performance in
 5    the very near term, the cost to complete, the delay damages
 6    that could be assessed, just increases the potential
 7    liability against this estate and certainly seems like a
 8    burden on this estate.  And having an answer is in the
 9    utmost interest of the debtor being able to move forward
10    with whether or not it can perform as a subcontractor versus
11    just focusing on its general contracting business, and
12    allowing the other interested parties are here and an owner
13    is here representing its client, to get some idea of how
14    quickly the process can move forward to avoid what the
15    presentation earlier was is causing all these problems in
16    South Florida, construction litigation.
17              I'm not saying that that won't occur in this
18    instance, but getting an answer, having a shorter time
19    period, having a date is what we are asking for.
20              THE COURT:  Okay.  Thank you.
21              MR. SHELBY:  Thank you, your Honor.
22              THE COURT:  All right.  Mr. Charbonneau, you'll be
23    arguing on behalf of the debtor?
24              MR. CHARBONNEAU:  Yes, your Honor.
25              THE COURT:  Okay.
```

1          MR. CHARBONNEAU:  Your Honor, a quick housekeeping

2   matter before I launch into my presentation.  There was an

3   Exhibit A attached to my ECF 71, which was attached

4   incorrectly.  We did a notice of filing of the proper

5   composite Exhibit A.  That's at ECF 76.  I just want to make

6   the Court aware of that.

7          THE COURT:  I understand.  But right now all I'm

8   focusing on is the motion to shorten time --

9          MR. CHARBONNEAU:  Right.

10          THE COURT:  -- to which you filed an objection.

11          MR. CHARBONNEAU:  Right.  That's correct, your

12   Honor.

13          THE COURT:  All right.  So in making your

14   presentation, go ahead and address also the comments that

15   Mr. Shelby has made today.

16          MR. CHARBONNEAU:  I will, your Honor.

17          So insurance did not expire on the property.  It's

18   been continuous in place since 2022.  Edgewater -- when

19   these kind of insurances are renewed, people who are

20   familiar with insurance understands that it takes a while

21   for the carrier to get -- to issue COI's, certificates of

22   insurance.  Certificates of insurance are generally issued

23   four to six weeks from the renewal of the policy.  Edgewater

24   has a wonderful agent.  The agent was able to get them

25   within two weeks of the renewal, but there's never been a

Page 30

1    lapse of insurance, your Honor, ever.  And whenever proof of

2    insurance has been requested, it's been provided.

3           Do you know why the proof of insurance for our

4    laborers has not been provided, your Honor?  Because it was

5    never requested, but that's in place too.  And if and when

6    we get to a final evidentiary hearing, your Honor, you'll

7    see documents and testimony that prove that.

8           Your Honor, with respect to certain instances

9    where -- well, first, we dispute categorically that there

10   are quality of work issues that are the problem of

11   Edgewater.  There are issues, Judge, that we agree came

12   in -- or were created by trades people that came in after we

13   completed our drywall work, which required us to go back --

14   I don't know about required, for which we were asked to go

15   back and fix, but those were not issues that were caused by

16   us, your Honor, and those were created after our draw

17   requests.

18          In instances where Moriarty has not been paid,

19   your Honor, we've taken care of that by naming all the

20   property owners in our adversary proceeding, and to the

21   extent that we can't resolve this this afternoon or

22   tomorrow, we'll do so at the final evidentiary hearing.

23          Judge, in terms of the motion, and I notice that

24   Mr. Shelby stayed away from this, there is not a case -- oh,

25   I'm sorry.  Judge, there is not a case out there that stands

Page 31

1   for the proposition that the Court should and ever has

2   required assumption or rejection three weeks into the case.

3   In fact, all the cases that are cited by Moriarty -- you

4   know, when you read the headnotes, the danger of reading the

5   headnotes, Judge, is that there's wonderful general

6   propositions of law in them.  But when you look at the

7   cases, all the cases result in the motion to shorten time to

8   compel or -- shorten time to reject or assume, they're

9   denied.  They're denied, Judge.

10          If you look at Enron, the date of the decision was

11  June of 2002, the court there said that the debtor would

12  have until the middle of October to assume or reject, and

13  that was in the instance of an executory contract to which

14  the debtor was receiving material benefit.  Even in that

15  instance, Judge -- and we're not receiving any benefit from

16  these agreements -- the Court denied the motion.

17          If you look at Adelphia, which Moriarty relied

18  upon in articulating a number of factors, the court stated

19  in its opinion denying the motion to compel assumption or

20  rejection that it was very likely that the debtor was going

21  to reject the executory contract, because the debtor had

22  indicated that the contract was, in all likelihood,

23  constructively fraudulent.  But even there, Judge, the court

24  gave the debtor months, three months, in order to assume or

25  reject.

1          The other case that the Moriarty relies on, Cobby

2     (phonetic), Cobby Towers, Judge Cristol addressed the

3     Adelphia factors in similar fashion to what Moriarty did and

4     denied the motion shorten the time to assume or reject those

5     purchase agreements that were part of that case.

6          There was another case, Judge, a Supreme Court

7     case, the NLRB versus Bildisco, which don't even discuss

8     shortening of the time.  It's just stands for the

9     proposition that back before we knew it, collective

10    bargaining agreements are executory in nature.

11         What I thought was interesting, Judge, as I was

12    reviewing the cases, is that the Adelphia court in

13    articulating its very non-exclusive factors observed that

14    courts should consider many factors laid out in the

15    analysis, but the last factor is the successful

16    rehabilitation of the debtor.  That's generally accorded the

17    most weight.

18         Judge, we're under no illusions that we have until

19    forever to assume or reject these executory contracts.  We

20    understand that the more it's delayed the more potential

21    unsecured claims are going to build against this estate.

22    And we've got a fiduciary obligation, Judge, we recognize,

23    to minimize those.  We want to assume these agreements.  We

24    can perform under these agreements, but we can't perform

25    under these agreements, your Honor, if we're not paid.

1    That's impossible.  It might be for a very large company

2    like Moriarty that's adequately capitalized and is maybe not

3    receiving payments from its owners, but for -- I don't want

4    to call it a mom-and-pop operation, but for a smaller

5    operation, a sophisticated, but smaller operation like

6    Edgewater, that's just not feasible and not possible.

7              And so we're going to go into these meetings this

8    afternoon in good faith and we're going to do our best to

9    work out deals, but deals, your Honor, that are going to

10   result in either assumption or rejection.  But if

11   assumption, we want to bring before the Court on a

12   time-shortened basis under 9019, because we want to make

13   sure that the terms of assumption are spelled out with great

14   particularity and that there are obligations on both sides

15   for assumption and penalties for lack of performance.

16             Judge, I think I hit most of the points that

17   Mr. Shaw (sic) addressed unless the Court has questions for

18   me.

19             THE COURT:  All right.  Well, right now, I have

20   you all on the 9:30 motion calendar.

21             MR. CHARBONNEAU:  That's on the 19th?

22             THE COURT:  Not quite sure why that is.  On the

23   20th, I don't have any court.  Let me just see if there's a

24   reason why that's the case.

25             I can give you the whole morning on the 20th if

Page 34

1    you all are available.

2            MR. SHELBY:  That's works for me, your Honor.

3            This is Rick Shelby.

4            MR. CHARBONNEAU:  For the debtor as well, your

5    Honor.  I just want to make sure Mr. Vazquez can -- yes, he

6    can appear.

7            THE COURT:  Ms. Fox?

8            MS. FOX:  Your Honor, I'm in mediation that day.

9    It doesn't work for me.  Sorry.

10           THE COURT:  Is it possible that we can go forward

11   with these matters with you not being present?  I mean, I'm

12   just trying to accommodate everybody because the

13   following -- I want to get this done.

14           Let's see if we can do it the day before, the 18th

15   or the 19th at a different time.  Just hold on.

16           MS. FOX:  Your Honor?

17           THE COURT:  Yes, ma'am.

18           MS. FOX:  I think the 20th would be better.  I

19   also have a mediation on the 19th, but the 20th is a maybe,

20   so let's just go ahead and work with that day.

21           THE COURT:  Are you sure?

22           MS. FOX:  Yes, your Honor.

23           THE COURT:  Mr. Gold?

24           MR. GOLD:  I know how critical I am to working out

25   the issue with the Court, your Honor.  Fortunately, I am

1    available, but even if I weren't, of course, the parties

2    could go ahead on this, you know, critical, but not UST

3    focused issue.

4              THE COURT:  Okay.

5              MR. CHARBONNEAU:  Your Honor, may I ask a

6    question?

7              THE COURT:  No.

8              What is it?

9              MR. CHARBONNEAU:  Is the Court proposing to

10   conduct an evidentiary hearing on 20th on turnover.

11             THE COURT:  Well, I don't know what I'm doing.

12   But the bottom line is right now you're on motion calendar

13   for ten minutes, so that's not going to happen.

14             MR. CHARBONNEAU:  Yeah, I noticed it was noticed

15   as a preliminary hearing, but --

16             THE COURT:  Well, only because -- let me just say

17   this, and we can chat about it today.

18             You're asking for something that's going to

19   require the taking of evidence.  Okay.  So I need to do a

20   pretrial hearing, and perhaps since you all are going to be

21   chatting this afternoon, maybe part of what you can chat

22   about is if you don't come to an agreement, what you are

23   going to need to do in terms of getting ready for that

24   hearing.

25             MR. CHARBONNEAU:  Great, your Honor.

1          THE COURT:  It doesn't have to be today, but on

2    the 19th, if what we're all -- all we're going to be talking

3    about is, we need this much time -- I mean, the bottom line

4    is this debtor can't work without money, so it's going to

5    have to be on very short order.

6          Unfortunately, I'm going out-of-town on business

7    the entire following week, except for Friday, the 28th.

8          MR. CHARBONNEAU:  May I make a suggestion, your

9    Honor?

10         THE COURT:  Yes.

11         MR. CHARBONNEAU:  So the debtor believes we should

12   keep the 20th, give the parties -- so far, Judge, I've only

13   had a couple of conversations with Mr. Shelby, but the

14   working relationship has been excellent.  I'm cautiously

15   optimistic that we'll reach an agreement today, but if we

16   don't, I remember it was Judge Hyman who always told me

17   there's nothing that brings parties together like trial.

18   And I'd really like to keep the 20th and allow Mr. Shelby

19   and I to work on a pretrial order that we can upload to the

20   Court tomorrow if we are not successful today.

21         THE COURT:  Okay.  Because as I view it, the issue

22   of what is -- what was described by Mr. Shelby as creating

23   exigent circumstances is tied into the debtor's position as

24   articulated in the adversary proceedings that are filed, is

25   that the withholding of funds is wrongful.  Okay?

1          And regardless of whether the relationship with

2     the Moriarty group goes forward or not, if, in fact, the

3     debtor is owed money, then that money should be -- sounds

4     like New York out there.  Hold on.

5          MR. CHARBONNEAU:  Your Honor, I was reminded that

6     QBE should be included in the scheduling as well, so perhaps

7     we should check their availability.

8          THE COURT:  Ms. DeVoll.

9          MS. DEVOLL:  I am available the morning of 4/20,

10    and I believe Ms. Malfeld would also be available, but I

11    don't want to speak for her.

12         MS. MALFELD:  I would be, that's correct.

13         Thank you.

14         MS. DEVOLL:  We would not be available on

15    April 28th.  We have a separate case with a separate summary

16    judgment hearing that day, so we will be in court that day

17    on another matter.

18         THE COURT:  Okay.  Well, this is what I'm going to

19    plan to do.  If this is an evidentiary hearing, Ms. DeVoll

20    then either you or Ms. Malfeld has to be here in person

21    because I don't authorize, in the absence of raging COVID or

22    other major cooties, people that are participating in

23    evidentiary hearing not to be here.  Okay.

24         So what we'll do is, if you don't come to an

25    agreement and what we're going to be doing is some kind of

1    evidence on the morning of the 20th, then please let

2    Ms. Sanabria know, because we'll probably have to start at

3    8:30.   Okay?   Because I have a meeting at one that I have to

4    attend, and while we can come back in the afternoon, if

5    everyone is available, because I can miss Mr. Lepoints

6    (phonetic) investiture ceremony, that's all I have scheduled

7    for the afternoon, obviously if that's not necessary, then I

8    would prefer to attend.   But if I can't, that's no big deal.

9              MR. CHARBONNEAU:   Your Honor, just one

10   housekeeping matter, Ms. Calderin is going to be at an iWork

11   event, I think, in Washington, but I think she thinks I can

12   handle this on my own on the 20th.

13             THE COURT:   I have my doubts, but we'll allow him

14   to try to muddle his way through.

15             MS. CALDERIN:   Your Honor, may I ask the Court for

16   permission to attend by Zoom?   I, obviously, won't be asking

17   any questions of any --

18             THE COURT:   Well, you can observe, right.

19             MS. CALDERIN:   Thank you your Honor.

20             THE COURT:   Yes, Ms. DeVoll.

21             MS. DEVOLL:   Your Honor, also I believe

22   Ms. Malfeld will attend in person.   I'm also in DC and will

23   probably be at some similar events as Ms. Calderin.   I will

24   try to be there in person, but in the event, may I also

25   observe via Zoom.

Page 39

```
1              THE COURT:  Yes, as long as the attorney that's

2    taking evidence or making the -- putting forth the arguments

3    is in the courtroom.  Okay?

4              MS. DEVOLL:  Thank you, your Honor.

5              THE COURT:  And I always support any type of

6    conferences, but we have to move forward with the case.

7              MR. CHARBONNEAU:  Thank you, your Honor.  That's

8    all I have.

9              THE COURT:  Okay.  So, yes, Mr. Shelby?

10             MR. SHELBY:  Thank you, your Honor.  Rick Shelby

11   on behalf of John Moriarty.

12             If I may I'm trying to understand what -- where we

13   are with the Court, that the Court is moving forward on the

14   turnover motion.  I will have to say and maybe this is my

15   fault, I haven't appeared in the adversary proceeding, so I

16   haven't gotten a copy of the actual motion.  It wasn't

17   served on me, so I need to get that corrected.  But the

18   question I, then, have is, you know, my clients are here

19   today, they are concerned about what their relief would be

20   from this Court, is this --

21             THE COURT:  Well, this would all be happening on

22   the morning of -- either you're going to come to an

23   agreement, right, either you're going to come to an

24   agreement and all these issues will be resolved in a way

25   that maybe not everybody is happy, but they can all live
```

Page 40

1   with it, right?  That's what I'm hopeful, or you'll have the

2   opportunity on Thursday morning to put forth your position

3   and the debtor will have the opportunity to put forth their

4   position, because I view them as sort of being the flip side

5   of the same coin.  Yes?

6          MR. SHELBY:  I agree, your Honor.  I'm just making

7   sure that that was our --

8          THE COURT:  Right, and if you're not the person

9   who is going to be -- and, again, the motion for turnover

10  isn't the full adversary, and so it could be that in the

11  discussions that the two of you have and Ms. DeVoll and

12  Ms. Malfeld regarding what's going to happen if an agreement

13  is not reached, which I'm assuming those conversations would

14  take place probably later -- well, it's already -- what day

15  is it today?  Wednesday?  Wednesday.  By Friday, let's say,

16  I mean, I can use that Thursday time that you already have

17  on the motion calendar, and we can discuss what -- where you

18  are or we can do it on Tuesday or Monday when I also have

19  court time, Monday by video, Tuesday could probably be by

20  video as well if we're just discussing what's gonna happen

21  Thursday morning, where we are.  Because, again, if you all

22  come to an agreement, then maybe everybody doesn't have to

23  be in here in person.

24          I'm not sure whether you're local, Mr. Shelby.  I

25  didn't -- I don't remember.  Where are you from?

Page 41

```
1              MR. SHELBY:  I have an office in Tampa and an
2    office in New Orleans.
3              THE COURT:  Oh, I'm so jealous.
4              MR. SHELBY:  I spend more time in New Orleans, but
5    that's on purpose.  No.  I'm just kidding.
6              THE COURT:  Yeah, who wouldn't Jazz Fest is
7    coming.  I have to miss it again this year.
8              MR. SHELBY:  Oh, I'm sorry.
9              THE COURT:  Both weekends, I'm so bummed.
10             All right.  Enough about me.
11             All right.  So that would be the purpose, is for
12   you all to try to come to an agreement.  If you can't I'm
13   going to accommodate you on Thursday morning starting at
14   8:30 to do whatever it is that we're going to talk about.
15   It could be that if you're not able to come to an agreement,
16   then on Thursday morning you'll let Ms. Sanabria know.  I'm
17   willing to start at 8:30, if need be, to try to cover
18   whatever we can.  If for whatever reason, it's going to turn
19   out not to be a full-blown evidentiary hearing, then the
20   issues are going to be limited, then we can start at nine or
21   9:30.  I'm going to accommodate you.  It's not a problem.
22             MR. CHARBONNEAU:  Your Honor, the scheduling order
23   that Mr. Shelby and I are to work on if we don't reach
24   agreement today, tomorrow, will that include exchanging of
25   witness and exhibit lists, maybe some limited depositions?
```

Page 42

1    I don't know, what does the Court have in mind?

2         THE COURT:  Well, I mean, here's the bottom line.

3    Let's go back to the old days before everybody started to

4    treat Bankruptcy Court like every other kind of district

5    court, okay.

6         You'll take whatever discovery you have to take.

7    You'll do it on shortened notice.  You'll exchange witness

8    lists and exhibits no later than the night before.  They

9    will be uploaded on the docket.

10        Mr. Shelby, if you've not uploaded exhibits on the

11   Southern District of Florida docket yet, it's similar to the

12   procedure in the Middle District, but not exactly the same.

13   But I believe Mr. Charbonneau or Ms. Calderin has already

14   done it, and they can help you get through the logistics of

15   that.

16        The same with you, Ms. DeVoll, Ms. Malfeld, if you

17   have exhibits that you need to upload.  But the exchange

18   would be no later than 4:00 p.m. the day before, which would

19   be the 19th by 4:00 p.m.  None of this midnight stuff,

20   because my law clerk and I have to have an opportunity to

21   look at it as well.

22        MR. CHARBONNEAU:  Understood.  And we're happy to

23   help anyone who needs the assistance, Judge.

24        In terms of depositions, can I assume that

25   language would be included in the order shortening time to

Page 43

1    allow the taking of those examinations before the hearing?

2            THE COURT:  Yes.

3            MR. CHARBONNEAU:  Okay.  I'm just checking.

4            THE COURT:  I know some of you are a lot younger

5    than I am, but, you know, in the old days, you know, when I

6    had to walk through the snow to get to the courthouse, you

7    know, we had a case where we did 17 depositions in one day

8    on three-day's notice.  So that's the way it used to be.

9    All right.  That's the way we did it in Bankruptcy Court.

10           So I'm assuming that based on the experience of

11   both Mr. Shelby and you have Mr. Charbonneau and

12   Ms. Calderin, based on her experience, I don't know enough

13   about Ms. DeVoll to attest to hers or Ms. Malfeld, you'll be

14   able to get it done.

15           MR. CHARBONNEAU:  I'm sure we will, your Honor.

16   Thank you.

17           THE COURT:  But, again, I just want to say I hope

18   that you all are able to come to an agreement that gives

19   everybody resolution.  If not I will accommodate you as best

20   I can on Thursday the 20th.  And you still, right now, have

21   a very short window for preliminary issues on Wednesday

22   morning.  We don't -- so I'll -- we'll leave them on the

23   calendar.

24           Well, let me see, which ones can we leave on the

25   calendar without Ms. Sanabria sending me a nastygram after

Page 44

```
 1   the hearing is over?  Hold on just a second.

 2             I see we have an application to employ.  We'll

 3   leave that on that time period just to hold the spot.  Okay?

 4   Everything else will be rescheduled to the 20th.  But that

 5   way if you need time on the 19th, I still have it on the

 6   calendar.

 7             Okay.  Does that work for everybody?  And that

 8   could be by video if it's just that one matter.

 9             Okay.  So with respect to ECF 55, Mr. Shelby, the

10   motion is granted in part, okay.

11             MR. SHELBY:  Thank you, your Honor.

12             THE COURT:  And with respect to ECF 64, which

13   is -- oh, I have a question for you about that -- the

14   amended motion to compel that is going to be scheduled for

15   20, okay?  As will the hearing on the -- the -- in the

16   adversary proceeding, ECF No. 5, I don't remember the number

17   of the adversary proceeding.

18             Yes, Mr. Shelby?

19             MR. SHELBY:  You said you had a question on the

20   amended --

21             THE COURT:  Yes, what's the difference between the

22   amended --

23             MR. SHELBY:  Your Honor, there was no difference.

24   There was deficiency because when my assistant filed it, she

25   didn't choose the relief from stay alternative, so we had to
```

Page 45

1    pay a fee, so I figured the best way was to file it as an

2    amended motion.

3                THE COURT:  I mean, that's fine, but, I mean, I --

4    my request for motions, my requirement for orders, my

5    request for motions is if you're filing an amended motion

6    just drop a short footnote, so that my law clerk and I

7    aren't sitting there trying to figure out why it's amended.

8    When it's orders it has to have a footnote that says why the

9    order is amended.  But for motions it's just -- it would be

10   easier, because I couldn't figure out what the difference

11   was.  At one point I figured I would give up and just ask

12   you today.  Okay?

13               MR. SHELBY:  Do you want me to put a footnote in

14   the order that I upload?

15               THE COURT:  No.  It's when you file an amended

16   order from an order.  Got it?

17               MR. SHELBY:  Got it.

18               THE COURT:  Like sometimes there's typos.

19               MR. SHELBY:  Yep.

20               THE COURT:  Not that anybody here has ever failed

21   to proofread properly, but there are some practitioners in

22   front of me that are pretty sloppy, so --

23               MR. SHELBY:  Okay.  Thank you, your Honor.

24               THE COURT:  All right.  Thank you.

25               All right.  Is there anything else we need to

Page 46

1    cover in this morning's hearing?

2              Ms. Calderin.

3              MS. CALDERIN:  Your Honor, for today we thank the

4    Court for the Court's time, and I think we'll rest for

5    today.

6              THE COURT:  Okay.  Anything from -- or anybody

7    else on this side of the courtroom?

8              (No audible response.)

9              THE COURT:  Okay.  How about this side of the

10   courtroom?

11             (No audible response.)

12             THE COURT:  Okay.  We're good.

13             Virtual courtroom are we good?

14             (No audible response.)

15             THE COURT:  All right.  Well, thank you all.

16   Everybody stay safe and stay well.  I think court reconvenes

17   whenever Ms. Sanabria tells me it reconvenes this afternoon.

18   And good luck with -- I hope you all are able to come to an

19   agreement if you can.  I'm confident with the professionals

20   that are here that you'll do as best you can.

21             MS. CALDERIN:  Your Honor, one more thing, I

22   forgot to tell the Court, Ms. Fox is helping us out today --

23             THE COURT:  Of course she is.

24             MS. CALDERIN:  -- so we're very thankful for --

25             THE COURT:  You're very lucky to have Ms. Fox.

Page 47

1           MS. CALDERIN:  We're thankful for the schlepp from

2    Broward County.

3           THE COURT:  All right.  Thank you.

4           Well have a good swim back to your offices.

5           All right.  That concludes the morning hearings.

6    Court will reconvene this afternoon.

7           (Whereupon, the hearing was concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 48

1                              CERTIFICATION

2

3

4     STATE OF FLORIDA              :

5     COUNTY OF BREVARD             :

6

7            I, Anna M. Meagher, Stenographic Reporter, and

8     Notary Public in and for the State of Florida at Large, do

9     hereby certify that the foregoing proceedings were

10    transcribed by me from a digital recording held on the date

11    and from the place as stated in the caption hereto on page 1

12    to the best of my ability.

13           WITNESS my hand this SEALDATEWITHDAY.

14

15

16           _____

17           Anna M. Meagher, Stenographic Reporter
                     and Notary Public
             in and for the State of Florida at Large
18                  Commission #HH59960
                      January 9, 2025

19

20

21

22

23

24

25