*Tagged opinion*



**ORDERED in the Southern District of Florida on January 23, 2024.**

**Laurel M. Isicoff, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

EDGEWATER CONSTRUCTION GROUP, INC.,

    Debtor.                                          /

Case No.: 23-12217-LMI

Chapter 11
Subchapter V

# MEMORANDUM OPINION ON ORDER DENYING APPLICATION FOR ADMINISTRATIVE CLAIM

This matter came before the Court for oral argument on December 14, 2023 pursuant to the Court's *Order Setting Oral Argument* (ECF #400)[1] and

---

[1] The *Order Setting Oral Argument* emanated from the *Debtors' Ex Parte Motion To Set Expedited Hearing On: (A) Debtor's Amended Verified Motion For Summary Judgment On Balfour Beatty Construction, LLC's Motion To Allow Postpetition Claim For Damages Against The Debtor With The Priority Of An Administrative Claim [ECF# 342]; And (B) Amended Application For Administrative Expenses To Allow Postpetition Claim For Damages Against The Debtor With The*

upon the further briefing submitted by the parties.² The Court previously entered its *Order Denying Application for Administrative Claim* (ECF #462) (the "Order") entered on December 18, 2023. This is the Court's more detailed ruling.

**FACTUAL BACKGROUND**

The Debtor and Balfour Beatty Construction, LLC ("Balfour") had a prepetition contractual relationship for stucco work on the RD East Las Olas Project and the 2000 Biscayne Project (the "Projects"). The contracts for the two Projects (collectively the "Contracts") were virtually identical except with respect to project specific specifications. Pre-petition the Debtor suspended work on the Projects, alleging that Balfour was not making payments on completed work, and the Debtor, therefore, could not pay its workers.

On March 22, 2023, the Debtor filed this bankruptcy case (the "Petition Date"). On May 19, 2023, the Debtor filed a Claim of Lien against the RD East Las Olas Project (the "RD Claim of Lien") pursuant to Fla. Stat. §§713.06 and 713.08 in Miami-Dade County, Florida. Debtor asserts a completed value of $208,953.59 and a remaining unpaid amount of $135,213.67 for the period commencing March 8, 2022 and ending March 20, 2022. On May 24, 2023, the Debtor filed a Claim of Lien against the 2000 Biscayne Project in the amount of $57,738.00 (the "2000 Biscayne Claim of Lien", and together with

---

*Priority Of An Administrative Claim) Filed By Creditor Balfour Beatty Construction, LLC [ECF #353]* (ECF #366) (the "Motion").
² *Balfour Beatty's Supplement to December 14, 2023, Hearing Regarding The 2000 Biscayne Project Payment* (ECF #448) ("Balfour Supplement"); *Debtor's Response in Opposition to Balfour Beatty Construction LLC's Supplement to December 14, 2023, Hearing Regarding the 2000 Biscayne Project Payment [ECF #448]* (ECF #458) ("Debtor's Supplement").

the RD Claim of Lien, the "Claims of Lien").

On June 16, 2023, Balfour filed its *Motion to Allow Postpetition Claim for Damages Against the Debtor with the Priority of an Administrative Claim* (ECF #173) (the "Admin Claim Motion"), which was superseded by the Amended Admin Claim Motion (defined below).

On November 2, 2023, the Debtor filed its *Amended Verified Motion for Summary Judgment on Balfour Beatty Construction, LLC's Motion to Allow Post-Petition Claim for Damages Against the Debtor with the Priority of an Administrative Claim* (ECF #342) (the "Debtor's MSJ").

On November 10, 2023, Balfour filed its *Amended Motion to Allow Post-Petition Claim for Damages Against the Debtor with the Priority of an Administrative Claim* (ECF #353) (the "Amended Admin Claim Motion") in addition to its *Response in Opposition to Debtor's Amended Verified Motion for Summary Judgment* (ECF #354) ("Balfour's Response"). In the Amended Admin Claim Motion, Balfour argues it is entitled to an administrative claim for damages because "the Debtor willfully and maliciously filed two Claims of Liens that constitute fraudulent liens under Florida law" and to an administrative claim for over $40,000 based on Balfour's payment to John Abell Corp. and Southern Carlson - obligations owed by the Debtor – because this payment conferred a benefit upon the Debtor and the estate.

On November 22, 2023, the Debtor filed its *Verified Response in Opposition to Balfour Beatty Construction, LLC's Amended Motion to Allow Post-Petition Claim for Damages Against the Debtor with the Priority of an*

3

*Administrative Claim [ECF #353]* (ECF #364) (the "Debtor's Response"), disputing Balfour's entitlement to any administrative claim.

## ANALYSIS

There are two types of administrative claims, those meeting the requirements of 11 U.S.C. §503(b)(1) of "actual, necessary costs and expenses of preserving the estate", and, at least in the Eleventh Circuit, the "Reading" administrative claim.

> The Eleventh Circuit has held that section 503(b) requires an actual concrete benefit to the estate before a claim is allowed as an administrative expense. *Broadcast Corp. of Ga. v. Broadfoot (In re Subscription Television of Greater Atlanta),* 789 F.2d 1530, 1531 (11th Cir.1986). In addition to the statutory definition of administrative claim, there is what has been called the "Reading" administrative claim. In *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), the Supreme Court held that innocent third parties who suffered losses from a fire at a plant operating under Chapter XI of the Bankruptcy Act were entitled to assert administrative claims. The Supreme Court in Reading described the statutory objective of bankruptcy as "fairness to all persons having claims against an insolvent." 391 U.S. at 477, 88 S.Ct. 1759.
>
> There has been some debate amongst the circuits whether and to what extent Reading survived the enactment of the Bankruptcy Code in 1978. That issue is settled in the Eleventh Circuit. In *Alabama Surface Mining Commission v. N.P. Mining Company Inc. (In re N.P. Mining Co., Inc.),* 963 F.2d 1449 (11th Cir.1992) ("*N.P.Mining*"), the Eleventh Circuit held that *Reading* is still good law. Citing to controlling and persuasive authority, the Eleventh Circuit held that even if that which gives rise to an expense does not confer a benefit on the estate, the estate may still be liable for attorney fees, costs, and expenses under one of the following three circumstances: (1) the expenses are to compensate a victim of the estate's tortious conduct; (2) the expenses are for, or related to environmental cleanup; or (3) the charges are civil penalties incurred due to the debtor's failure to comply with state law. *N.P. Mining* 963 F.2d at 1456–58.

*In re ER Urgent Care Holdings, Inc.*, 474 B.R. 298, 301–02 (Bankr. S.D. Fla. 2012).

Balfour argues that it is entitled to an administrative claim under section 503(b)(1) because, post-petition, it paid over $40,000 to two of the Debtor's subcontractors, John Abell Corp. and Southern Carlson, who were owed money by the Debtor for pre-petition work.[3] Balfour also argues it is entitled to a "Reading" administrative claim because the "the Debtor willfully and maliciously filed two Claims of Liens that constitute fraudulent liens under Florida law, specifically Fla. Stat. § 713.31(2)(a)."

First, the Court finds that Balfour is not entitled to an administrative claim on account of its payment to John Abell Corp. and Southern Carlson for obligations owed by the Debtor. Balfour claims this payment conferred a benefit on the estate. The Court disagrees. There is no benefit to the estate by Balfour's *voluntary* payment to unsecured creditors of the Debtor, payments that Balfour was not legally compelled to make[4]. Indeed, as Debtor argues, to accept Balfour's claim of administrative priority on account of these voluntary payments would harm the estate, since to do so would elevate two unsecured claims to administrative status, to the detriment of other unsecured creditors.

Second, the Court rejects Balfour's argument that it is entitled to an administrative claim under the *Reading* doctrine due to the Debtor's filing of

---

[3] On November 17, 2023 the Debtor filed a partial satisfaction of lien to account for the $42,264.70 paid by Balfour to John Abell Corp. and Southern Carlson.
[4] The Court does not need to address whether, and therefore is not making any finding that, a legally compelled payment might constitute an administrative claim.

the Claims of Lien. Florida Statute §713.31(2)(a) defines a fraudulent lien as:

> Any lien asserted under this part in which the lienor has willfully exaggerated the amount for which such lien is claimed or in which the lienor has willfully included a claim for work not performed upon or materials not furnished for the property upon which he or she seeks to impress such lien or in which the lienor has compiled his or her claim with such willful and gross negligence as to amount to a willful exaggeration shall be deemed a fraudulent lien.

Fla. Stat. §713.31(2)(a). Section 713.31 goes on to say: "However, a minor mistake or error in a claim of lien, or a good faith dispute as to the amount due does not constitute a willful exaggeration that operates to defeat an otherwise valid lien." Fla. Stat. §713.31(2)(b).

Balfour argues that the filing of the Claims of Lien constitutes tortious conduct. However, because the Court finds that the Claims of Lien are not fraudulent, there was no tortious conduct giving rise to any damages claim.[5]

With respect to the RD Claim of Lien, Balfour argues that the lien was willfully exaggerated since Debtor knew Balfour had paid John Abell Corp. and Southern Carlson. The Court is not persuaded by this argument. The Court finds that, although the Debtor had been told that Balfour had paid these subcontractors, in light of the ongoing disputes between the Debtor and Balfour, it was reasonable for the Debtor to demand proof. Debtor's subsequent filing of a partial satisfaction of lien once the Debtor received the requested proof of payment from Balfour counters any claim of willful exaggeration.

---

[5] It is not necessary for the Court to determine whether the filing of a fraudulent claim of lien would constitute tortious conduct under the *Reading* administrative claim theory.

6

Balfour argues that the 2000 Biscayne Claim of Lien is fraudulent because the Debtor did not perform *any* work. However, this Court already found that the Debtor at least "had caused stucco supplies to be delivered to the site of the 2000 Biscayne Project. Among Edgewater's material and equipment, Balfour Beatty was holding approximately 36 pallets of stucco for RD East Las Olas and 14 for 2000 Biscayne." *See Order on Debtor's Emergency Motion for an Order Enforcing the Automatic Stay; Setting Further Hearing on Request for Sanctions for Intentional and Willful Violation of the Automatic Stay; and Setting Further Hearing on Request for Turnover* (ECF #242) (the "Stay Violation Order").

In addition Balfour argues that the 2000 Biscayne Claim of Lien is fraudulent because the Debtor was not entitled to payment since Balfour had not been paid by the owner for the Debtor's work and the 2000 Biscayne Project Contract has a "pay-if-paid" clause ("payment from Owner of amounts due . . . is a condition precedent to [Balfour's] obligation to pay Subcontractor").

To accept Balfour's argument that a claim of lien is fraudulent under section 713.31(2)(b) if there is a "pay-if-paid" clause and the contractor has not been paid, would effectively eliminate a subcontractor or materialman's rights under the statute. *See* Leonard Klingen, *Florida's Unwieldy but Effective Construction Lien Law,* Fla. B.J., January/February 2019, 26, 31[6] ("The increasingly prevalent pay-if-paid clauses wreak havoc with a lienor's rights. When payment by the owner is a condition precedent to a contractor's payment

---

[6] This article was cited by Balfour in the Balfour Supplement.

7

obligation to a downstream lienor, the lienor is not 'unpaid' if the contractor has not been paid. In the meantime, the 90-day window closes and the lienor is left with the option of filing a fraudulent lien (timely, but for funds not yet due) or an invalid lien (untimely). Most lienors would presumably opt for the former."). A lienor's choice to protect its interests in the statutory framework in an otherwise lose-lose scenario cannot be characterized as a willful exaggeration or gross negligence that rises to the level of a fraudulent lien. To interpret section 713.31(2)(a) as Balfour suggests would lead to an absurd result.[7] Chapter 713, as reflected in the case law interpreting the chapter, was created primarily for the benefit of those who improve real property. *See Edwin Taylor Corp. v. Mortgage Elec. Registration Sys., Inc.*, 311 So. 3d 139, 141 (Fla. 2d DCA 2020) (internal citations and quotations omitted) ("[The fundamental purpose of [the construction lien law] ... is, to protect those whose materials, labor and skills improve the land of others by providing a plan by which such persons or firms may receive their fair share of the moneys payable by the owner to the general contractor ...."). Thus, the Court finds that, notwithstanding the presence of a "pay-if-paid" clause, a subcontractor or materialman who files a claim of lien for amounts not yet due under a pay-if-paid contract in order to satisfy the statutory deadline has not filed a fraudulent claim of lien.

For the reasons set forth above, it is **ORDERED** as follows:

---

[7] "Statutes, as a rule, will not be interpreted so as to yield an absurd result." *Florida Dept. of Highway Safety & Motor Vehicles v. Hernandez,* 74 So. 3d 1070, 1079 (Fla. 2011) (internal citations and quotations omitted).

8

1. Balfour Beatty is not entitled to an administrative claim in this case.

2. The Admin Claim Motion (ECF #173) and Amended Admin Claim Motion (ECF #353) are **DENIED**.

3. The Debtor's MSJ (ECF #342) is **GRANTED**.

# # #

Copies furnished to:
Jacqueline Calderin, Esq.
Kenneth Mather, Esq.

*Attorney Calderin is directed to serve a copy of this Memorandum Opinion on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry.*